# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**In the Matter of Subpoenas to Wisconsin Energy Corporation and the Wisconsin Energy Corporation Retirement Account Plan**

**LAWRENCE G. RUPPERT, et al.,**

                Plaintiffs,

        **-vs-**

**ALLIANT ENERGY CASH BALANCE PENSION PLAN,**

                Defendant.

**Case No. 10-MC-7**

## DECISION AND ORDER

This matter comes before the Court on a motion to quash nonparty subpoenas issued to Wisconsin Energy Corporation and Wisconsin Energy Corporation Retirement Account Plan (collectively, "WE"). The subpoenas were initiated by plaintiffs' counsel in a case currently pending in the Western District of Wisconsin, *Ruppert, et al. v. Alliant Energy Cash Balance Pension Plan*, No. 3:08-CV-00127-bbc (W.D. Wis.). On February 18, the Court denied the plaintiffs' motion to transfer to the Western District, but invited WE to file a motion for a protective order in the Western District. WE declined, so the Court will proceed to resolve the instant motion. WE also requested a hearing, but the Court finds that a hearing is unnecessary. For the reasons that follow, WE's motion to quash is granted.

The Court may quash or modify a subpoena if it subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). The Seventh Circuit applies a "relative hardship test," considering whether the burden of compliance would exceed the benefit of production of the materials sought. *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927, 933 (7th Cir. 2004). Additionally, the Court may consider whether the subpoena seeks discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2). Non-parties "are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, *1 (N.D. Ill. Jan. 6, 2005). WE is the sponsor and administrator of the WE Plan, an ERISA-governed defined benefit pension plan. WE is not a party to the Western District litigation, but WE is the defendant in a case currently pending in the Eastern District before Judge Adelman, *Downes v. Wisconsin Energy Corporation Retirement Account Plan*, Case No. 09-C-0637 (E.D. Wis.) The WE Plan, just like the defendant in the Western District case (Alliant Energy Cash Balance Plan), is a "cash balance" pension plan. According to the plaintiffs, the WE Plan and the Alliant Plan, along with the S.C. Johnson & Son, Inc. ("SCJ") Plan and the JohnsonDiversy, Inc. ("JDI") Plan, are the only four plans which utilize a trust-return based interest crediting rate.

The subpoenas at issue seek stochastic modeling reports, which plaintiffs hope to use in support of a motion for summary judgment in the Western District case. Stochastic

modeling is a sophisticated probability tool used for determining, among other things, future portfolio returns. More specifically, the subpoenas request the following:

> All documents and electronically stored information concerning the use or potential use of stochastic modeling for any purpose related to the WE Plan, including but not limited to: (1) conducting asset-liability studies; (2) considering potential changes in asset allocation; (3) evaluating options with respect to changing plan design features; (4) assessing impacts relating to a possible freeze or termination of the Plan; (5) estimating or projecting (a) anticipated future interest credits (or "Indexing Rates") and/or (b) future asset returns for (i) funding, (ii) accounting or (iii) any other purpose.

WE argues that the subpoenas are unduly burdensome. WE estimates that it would cost in excess of $1,000,000 to respond to these subpoenas. Docket 1, Tab E, Declaration of Ian Morrison. Plaintiffs scoff at WE's claims of undue burden, but offer no reason to disbelieve WE's estimates. WE also argues that the information on stochastic modeling is irrelevant to the Western District case and, in any event, is cumulative of evidence already collected by the *Ruppert* plaintiffs from other sources. According to WE, the *Ruppert* subpoenas are really an end-run around the discovery restrictions imposed by Judge Adelman in *Downes v. WE*, Case No. 09-C-637 (E.D. Wis.)

Plaintiffs claim that the uniqueness of the interest crediting rate formula used by these plans establishes the relevance of the information sought. In a similar case currently pending before Judge Stadtmueller, *Thompson, et al. v. Ret. Plan for Employees of S.C. Johnson & Sons, Inc.*, No. 2:07-CV-1047-JPS (E.D. Wis.), plaintiffs offered evidence pertaining to pre-litigation stochastic modeling that was performed with respect to the SCJ Plan, the JDI Plan, and the Alliant Plan. Plaintiffs want to do the same in the Western District but wish to add

-3-

information about the WE Plan's stochastic modeling. This begs the question of why evidence from the plan at issue (Alliant) and corroborating evidence from the other two plans (JDI and SCJ) aren't good enough for the Western District litigation. WE's substantial burden of compliance far exceeds the marginal benefit of this cumulative information.

Plaintiffs claim that their request "can be largely satisfied by producing a mere handful of easily retrieved documents." However, when WE attempted to resolve the parties' differences along these lines, they were rebuffed. D. 9-1, 9-2. There seems to be some disconnect between the broadness of the subpoenas as written on the one hand, and plaintiffs' insistence that they only want a "core set of documents" on the other. The Court considered the possibility of narrowing the scope of the subpoenas, but finds instead that the best approach is to send the parties back to square one. The subpoenas, as written, are unduly burdensome. If the plaintiffs truly want a narrower set of information than that requested in the subpoenas, the parties should be able to resolve their differences without court intervention.

Finally, plaintiffs moved to file two exhibits (D. 6 and 7) under seal pursuant to protective orders in *Thompson* and/or *Ruppert*. Even though the parties may designate certain documents as "confidential" for purposes of discovery, the inquiry changes when documents are publicly filed. No court may grant a "virtual carte blanche to either party to seal whatever portions of the record the party want[s] to seal. . . . The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir 1999).

-4-

Case 2:10-mc-00007-RTR   Filed 02/24/10   Page 4 of 5   Document 13

Rather, courts must determine "what parts of the [record] contain material that ought, upon a neutral balancing of the relevant interests, be kept out of the public record." *Id.*

Aside from invoking a protective order, neither party offers any justification for filing these exhibits under seal. The Court understands that the plaintiffs were merely acting in accordance with the protective orders, but if the defendants in *Thompson* and/or *Ruppert* hope to keep these exhibits (or any portion thereof) under seal, they must establish good cause for doing so. *See Citizens First*; *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002); *Grove Fresh Dist., Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994); General L.R. 79 (E.D. Wis.) The parties should consider submitting redacted versions accompanied by a motion to seal. General L.R. 79, Committee Comment.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. WE's motion to quash [D. 1] is **GRANTED**;

2. Plaintiffs' motion to compel [D. 2] is **DENIED**;

3. Plaintiffs' motion to file exhibits under seal [D. 4] is **DENIED**; and

4. In the absence of an additional motion to seal, filed on or before **March 5, 2010**, the Clerk of Court is directed to unseal Docket Nos. 6 and 7 (Exhibits 1 and 4 to Docket No. 3).

Dated at Milwaukee, Wisconsin, this 24th day of February, 2010.

         **SO ORDERED,**

         *s/ Rudolph T. Randa*
         **HON. RUDOLPH T. RANDA**
         **U.S. District Judge**